**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TIMOTHY W. RICKS, | ) | |
| | ) | |
| Plaintiff, | ) | No.00-427C |
| | ) | (Judge Williams) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

REPLY TO PLAINTIFF'S RESPONSE TO SUPPLEMENT TO REMAND
RECORD AND SUPPLEMENTAL BRIEF UPON HARMLESS ERROR

In accordance with the Court's order dated June 30, 2006, we respectfully file this reply brief in support of our supplemental filing.

OUR SUPPLEMENTS TO THE RECORD ADDRESSED THE COURT'S QUESTIONS

Our earlier supplement responded to those matters upon which the Court had requested elaboration – namely, the regulation regarding selection of benchmark records applicable at the time of Mr. Ricks's central selection boards ("CSBs") and supplementation of Lieutenant Colonel ("Lt Col") Taylor's declaration.[1] These documents are completely consistent with the benchmark selection method we described to the Court during the June 29, 2006 oral argument.

Mr. Ricks challenges Mr. Clayton's declaration as not adequately describing benchmark selection and alleges that it demonstrates such selection to be arbitrary. Pl. Resp. 1 - 2.[2] This assertion is not borne out by the text of the declaration or the attached regulation. Mr. Clayton's

[1] As described in our earlier filing, no document which includes a date upon its face describes the particular benchmarks; rather, an undated notebook maintained by the Air Force Personnel Center ("AFPC") lists the particular benchmarks for each particular CSB.

[2] "Pl. Resp. __" refers to a page of Mr. Ricks's "Response To Defendant's Supplement To Remand Order And Supplemental Brief On Harmless Error."

declaration described a selection process consistent with the regulation's dictates that five of the benchmarks be selected "from among the lowest scoring selects and five from among the highest scoring nonselects." AFR 36-89, ¶ 16; Clayton Dec. ¶ 2.[3] Mr. Ricks's claim that the selection of benchmarks by the Recorder was arbitrary, Pl. Resp. 2, ignores the fact that it was constrained by the regulation (Mr. Ricks's quotation of Mr. Clayton's declaration here ellipsed out the benchmark criteria which the Recorder was required to follow) and casts the Recorder's exercise of his or her discretion in an falsely negative light: the regulation plainly vests the Recorder with the discretion to determine which records should be benchmarks – especially given identical or nearly identical scores – and it is not unseemly for the Recorder to be instructed that it was best to exercise that discretion to avoid an overrepresentation of any particular career field or to exclude anomalous records. Of course, Mr. Ricks's demand for the name of the individual who instructed the Recorders upon such rules in 1992 and 1993, see Pl. Resp. 2, is a red herring. This individual's identity is of no relevance, whatsoever, to a determination that the Government complied with the remand here.

## HARMLESS ERROR AND CONSTITUTIONAL VIOLATIONS

The balance of Mr. Ricks's brief essentially repeats his claim that the modified SSB utilized by the Air Force here was an improper means for addressing his constitutional claim. We have previously addressed this argument and Mr. Ricks's brief generally ignores our earlier responses. To the extent that Mr. Ricks's argument is based upon the notion that Christian v. United States, 337 F.3d 1338 (Fed. Cir. 2003), is only applicable to class action-like suits, we

[3] "Clayton Dec. ¶ __" refers to a paragraph of the declaration of Howard G. Clayton, filed with the Court in our Supplement.

demonstrate that belief to be misplaced.

First, as we showed in our earlier filings, Christian definitively put an end to the fallacious argument that the remedy for a constitutional error should be reviewed under a different standard than the remedy for any other kind of error. See Christian, 337 F.3d at 1343 (citing Arizona v. Fulminante, 499 U.S. 279, 306 (1991)). While Mr. Ricks implies that his case should be treated differently than others because his case allegedly reflected "an intentional violation of . . . constitutional rights," see Pl. Resp. 4 - 5, he gives no reason why this should be true and cites no law in support of this proposition.

Mr. Ricks also implies that, notwithstanding the Christian court's broad grant of discretion to the service Secretary to fashion a harmless error solution, see 337 F.3d at 1349, the only proper remedy in that case would have been a re-running of the entire selective early retirement board at issue. Pl. Resp. 2 - 3. He also appears to imply that the terms of the settlements of other military personnel class actions have some bearing upon this case. Pl. Resp. 5 - 6. The argument related to the Christian remedy is not supported by the text of the decision, and Mr. Ricks's unbridled speculation regarding the Christian and Christensen settlements mean nothing to this case.[4] Multiple and complex considerations underlie any decision to settle a class-action lawsuit. Whatever Mr. Ricks may speculate that they were in the cases which he cites, they do not change what constitutes an adequate remedy in his case. Finally, we note that

---

[4] Although this entire line of argument is utterly irrelevant to whether we complied with the Court's remand order in Mr. Ricks's case, we feel obligated to note that Mr. Ricks has ignored the most closely analogous settlement in a military EEO case: Berkley v. United States, 59 Fed. Cl. 675 (2004). In that class action case, this Court contemplated a settlement in which plaintiffs were offered the opportunity to utilize modified SSBs very much like those used for Mr. Ricks. Judge Horn found this method to be an acceptable means for addressing harmless error in the context of the settlement. 59 Fed. Cl. at 690-91.

Mr. Ricks is incorrect in his allegation that AFPC maintains all of the records of all of the officers who competed against him. See Pl. Resp. 2, 6. Mr. Clayton stated that the originals of the benchmark records were returned to the central AFPC records repository, but did not state what happened to the records after that point. Air Force personnel have informed defendant's counsel that the typical practice is that officers' promotion records are not kept at AFPC indefinitely.

The question presented for a harmless error determination in a promotion case, like Mr. Ricks's, is whether it is "unlikely that he . . . would have been promoted in any event." Christian, 337 F. 3d at 1344 (quoting Porter v. United States, 163 F.3d 1304, 1318 (Fed. Cir. 1998)). In finding Air Force SSBs lawful in the past, the Federal Circuit has determined that they make a reasonable determination of the results of the CSB which they replicate. Haselrig v. United States, 333 F.3d 1354, 1356 (Fed. Cir. 2003). Thus, the SSB is a proper tool for determining harmless error. Our previous briefings and argument before the Court have demonstrated at length why the Secretary's modified method for resolving the benchmark taint issue is to Mr. Ricks's great advantage. To these arguments, we add nothing new except that Mr. Clayton's declaration provides added support for Lt Col Taylor's assertion that the grey area, from which benchmarks are chosen, is so large in a Lt Col CSB that the EEO instruction could not appreciably change the quality of the benchmarks against which Mr. Ricks was required to compete, and that any minuscule theoretical increase in benchmark quality was more than offset by the advantage of changing the scoring methodology.

CONCLUSION

For these reasons and for the reasons previously provided in our earlier filings, the Court should find that the Air Force complied with the remand order in this case and should dismiss the case.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7586
Fax: (202) 514-7969

Attorneys for Defendant

September 7, 2006