**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **TIMOTHY W. RICKS,** | ) | |
| | ) | |
| ***Plaintiff,*** | ) | |
| | ) | **No. 00-427C** |
| **v.** | ) | **(Judge Williams)** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| ***Defendant*** | ) | |

DECLARATION OF KAREN L. TAYLOR

Pursuant to 28 U.S.C. § 1746, I, Karen L. Taylor, make the following declaration on the above-cited case:

1. My name is Lieutenant Colonel ("Lt Col") Karen L. Taylor and I am an officer in the United States Air Force. I am the Deputy Chief of the Selection Board Secretariat (the "Secretariat") of the Air Force Personnel Center ("AFPC") at Randolph Air Force Base, Texas. As the Deputy Chief, I am also the Director of Operations for the Selection Board Secretariat. I have been in this position for the last two years and have over 17 years of experience in the personnel career field for the Air Force.

2. The Secretariat reports directly to the Secretary of the Air Force and is responsible for conducting all active duty central selection boards ("CSBs") for the Air Force, including, but not limited to, all promotion boards, all boards related to reductions in force or selective early retirement, special selection boards ("SSBs") conducted pursuant to 10 U.S.C. 628, and special boards conducted pursuant to 10 U.S.C. 1558. SSBs are designed to recreate the original board competition from an original central

selection board to determine if an officer would have been selected had they been properly considered.

3. In my position, I am intimately familiar with the process used to conduct boards supervised by the Secretariat, and I have participated as a non-voting member in over 60 promotion boards and over 300 SSBs. I was appointed by the Secretary of the Air Force ("SecAF"), and sworn in by the board president as a certified recorder, for both the Special Selection Lieutenant Colonel Board, CY92B, which convened at 0800 on 27 September 2005, and the Special Selection Lieutenant Colonel Board, CY93A, which convened at 0800 28 September 2005. Timothy W. Ricks was considered and not recommended for promotion by both of these boards based on the following process.

4. On the morning of 25 September 2005, the Selection Board Secretariat Staff briefed the Board President and the Board Members using the attached slides (Atch 1). The Board President then read the SecAF Memoranda of Instructions ("MOIs") verbatim to the board, and the staff provided a copy to each board member (Atch 2). The appropriate oaths were administered to board members, recorders and administrative staff. A trial run exercise was conducted to familiarize board members with the selection records and situations the board could encounter during actual scoring.

5. In preparation for these boards, we pulled the benchmark records for each board scheduled to be reconstituted from the Secretariat repository. These are the same twenty (ten from each board) benchmark records identified following the original '92 and '93 Central Selection Boards, and these are the same benchmarks used each time the Secretariat has re-convened these boards as SSBs since the original boards. In his 18 July 2006 declaration in this case, which I have reviewed, Mr. Howard Clayton swore to the

detailed procedures used to identify those benchmark records. We use the same methods today.

6. In further preparation for the board, we made a Xerox copy of Mr. Ricks' Officer Selection Record ("OSR") for use in the SSB process and "aged" the copy to appear as it should have at the time of the original boards. The copy was then arranged in alphabetical sequence along with the copies of the benchmark records to form a record pack. Board members were not informed which records were benchmarks and which were considerees'. The Secretariat staff then presented the record pack to the board members for scoring along with a ballot, including the year of the original CSB, grade, competitive category, and promotion zone.

7. The board members then scored the records using the following scoring scale:

| | |
|---|---|
| 10.0 | Absolutely superior |
| 9.5 | Outstanding |
| 9.0 | Few could be better |
| 8.5 | Strong |
| 8.0 | Slightly above average |
| 7.5 | Average |
| 7.0 | Slightly below average |
| 6.5 | Well below average |
| 6.0 | Lowest in potential |

Scoring was conducted by secret ballot. Those ballots were destroyed in accordance with our standard destruction procedures following the board. Board members were instructed to base their scores on the following:

1. The material in each officer's OSR.

2. Any information the SecAF may have provided to that board.

3. Any information communicated by letter from the officer concerning his/her own record.

8. After the board members scored the benchmark and considerees' records, the order of merit was formed. This order of merit and a "modified" selection method were used to determine the select/non-select status of Mr. Ricks.

The 19 February 2004 SecAF Memorandum of Decision (Atch 3) specifies the use of this "modified" method on SSBs where the officers claim they may have been harmed by the Equal Opportunity ("EO") language in MOIs used for promotion boards. While this method incorporates the current repository of benchmark records, it differs from the standard Air Force SSB procedures in select/non-select determination. Under this method, a consideree only needs to tie or beat one select benchmark record to be selected. The nonselect records, though not required to be beaten or tied, remain before the SSB members to calibrate their evaluation of the record as required by statute.

As a matter of reference, traditionally to become a select via the SSB process, a consideree's record must score higher than the score of every non-select benchmark record and equal to or higher than the score of any of the select benchmark records. If a consideree's score does not meet both criteria he or she is not selected.

The modified selection method was used on both boards that considered Mr. Ricks.

9. The race and gender of an officer are not reflected in his/her OSR nor are they reflected on the benchmark listings mentioned above. However, our staff used the SSANs from the benchmark records to inquire into the retired portion of the Air Forces' Military Personnel Data System and retrieved from that database the race/sex of each of the officers whose OSRs serve as benchmark records for these boards.

**CY92B, LAF, Lt Col Board, 16 November 1992**

| STATUS | GENDER | RACE |
|---|---|---|
| Select | Male | Black |
| Select | Male | White |
| Select | Male | White |
| Select | Male | Declined to Respond |
| Select | Male | White |
| Non-Select | Male | White |
| Non-Select | Female | White |
| Non-Select | Male | White |
| Non-Select | Male | White |
| Non-Select | Male | White |

**CY93A, LAF, Lt Col Board, 12 October 1993**

| STATUS | GENDER | RACE |
|---|---|---|
| Select | Male | White |
| Select | Male | White |
| Select | Female | White |
| Select | Male | White |
| Select | Male | White |
| Non-Select | Male | White |
| Non-Select | Male | White |
| Non-Select | Male | White |

| | | |
|---|---|---|
| Non-Select | Male | White |
| Non-Select | Male | White |

10. Attachments 4 and 5 are the board summaries for each board, reflecting total number of eligible officers and overall selection rates for minorities and women. The 1992B Lt Col CSB considered 9,543 officers in-, above-, and below-the-promotion zone, and the 1993A Lt Col CSB considered 10,177 officers in-, above-, and below-the-promotion zone. Almost all of these officers have now either separated or retired from active service. Locating, retrieving, and aging the nearly 19,700 officer selection records (estimated 473,280 documents) necessary to reconvene the two original boards, with 100% accuracy, would prove impossible for the Air Force.

11. In order to do this we would have to first determine if the officers are still on active duty, serving in the Guard or Reserve, separated, or retired. Based on what we find, we would then have to make the appropriate records requests to the corresponding agencies; for example, the Air Force General Officers Matters Office, Air Force Senior Officer Matters Office, Air Force Reserve Personnel Center, the National Personnel Records Center, and Air Force Personnel Center Records Groups. If we were somehow fortunate enough to get the 16,000 records, then we would need experts to review the records and "age" them to the 1992/93 time frame. This thorough "scrub" of the records would be required to remove documents that were not in the records at the time of the original board. We froze our benchmark copies, after the original boards, exactly as the board members viewed them, negating the need for the detailed "aging" process which would be required for the 16,000 records.

12. Conversely, our benchmark repository efforts are geared toward recreating the exact competition at the cut line and not toward reconvening entire 2-3 week selection boards that occurred in the past, and in this instance 15 years earlier. Since our process incorporates recreating the final cut between the selects and nonselects, not the entire 2-3 week process, the board members evaluate the records at the cut line and answer the ultimate "select or non-select question" by scrutinizing the point where the board exhausted the original quota. All records above the select benchmarks score category received higher scores, and all records below the non-select benchmarks score category received lower scores. Throughout any given year we conduct approximately 120 recreations of these original 2-3 week boards using this benchmark cut line process. It provides a way for the board members to "review the original board competition". In an attempt to estimate the cost of reconstructing these two boards I looked through past research.

13. AFPC previously conducted research into what it would cost to re-convene an entire board from the distant past--their scenario was the 1991 Majors LAF board. That board had 13,905 eligible officers. The estimated cost for recreating the records was $420,000. However, regardless of how thorough of a review conducted by the workers recreating the records, there could not be 100% accountability of all records. Additionally, using 5 panel members, serving on 6 panels, reviewing over 13,000 records for 2 weeks, the travel expenses for the board members could top $80,000. The study's estimated, overall cost would be $500,000 for the 1992 Major's board. Although the numbers for the 1992 and 1993 Lt Col Boards do not match up perfectly with the 1991 Major Board research, there is enough similar data to provide a comparison:

| Board | Elig Ofrs/ Records | Approx Docs | Cost Est Records & Mbr Travel |
|---|---|---|---|
| 91 Major | 13,905 | 250,290 | $500,000 |
| 92 Lt Col | 5,567 | 133,440 | $232,700 |
| 93 Lt Col | 10,177 | 244,248 | $430,000 |

I, Karen L. Taylor, do declare, under penalty of perjury, that the foregoing is true and correct. Executed January 19, 2007, at Randolph AFB, Texas.

/S/ Karen L. Taylor
Karen L. Taylor
Lieutenant Colonel, USAF

5 Attachments:

1. Briefing Slides
2. SecAF Memoranda of Instructions
3. 19 February 2004 SecAF Memorandum of Decision
4. CY 1992B Lt Col Board Summary
5. CY 1993A Lt Col Board Summary