IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TIMOTHY RICKS | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 00-427C |
| v. | ) | (Judge Williams) |
| | ) | |
| THE UNITED STATES | ) | February 15, 2007 |
| | ) | |
| Defendant | ) | |

PLAINTIFF'S MOTION FOR PERMISSION TO FILE RESPONSE

The Defendant filed an amended Declaration from Lt. Col. Karen Taylor on January 29, 2007. Plaintiff was to respond to the filing if desired within 14 days. The filing was made electronically. The email address for Counsel in the CM/ECF system had not been updated with his new e-mail address and the filing did not arrive. Defendant called counsel on or about February 5, 2007 to discuss his motion to file a modified declaration. This was the first time counsel was aware that the initial declaration had been filed. The modified declaration was filed on February 6, 2007 and counsel received a copy directly from Defendant on February 5, 2007.

Counsel has now updated his CM/ECF file so that future electronic filings will be received. The attached PLAINTIFF'S RESPONSE TO DEFENDANT'S DECLARATION to the modified declaration has been prepared and is being submitted within 14 days from it's filing.

Plaintiff requests the Court accept this PLAINTIFF'S RESPONSE TO DEFENDANT'S DECLARATION for filing with the other documents of record in this case.

Respectfully submitted,

//S//

Anthony W. Walluk

Counsel for Plaintiff

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TIMOTHY RICKS | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 00-427C |
| v. | ) | (Judge Williams) |
| | ) | |
| THE UNITED STATES | ) | February 15, 2007 |
| | ) | |
| Defendant | ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S DECLARATION

The Defendant filed an amended Declaration from Lt. Col. Karen Taylor on February 6, 2007 in response to the Court's request for further information. The declaration fails to answer the basic question raised by the court, to wit: is there proof that possible taint from the illegal instruction to the original boards was removed before the case was reconsidered by the Special Selection Boards. The answer, following this filing, is still that proof has been made available.

The declaration itself contains wording that prevents a clear understanding of what the SSBs actually considered. It refers on page 3 to making a Xerox copy of Plaintiff's Officer Selection Record and "aging" it. The declaration does not explain what "aging" is. Was the copy physically made to look like an old copy? If so, were all the other records Xerox copies, and did they in fact look identical? These records have still not been provided to Plaintiff and we have no notice they were provided to the Court, despite being specifically requested in redacted form, by the Court. Or was the aging process actually changing of dates to make the documents appear to have been created at an earlier time? We simply do not yet know what these boards looked at despite several

requests by the Court for such information. The original remand order request for a complete written record and that record is still absent form the file.

A second inconsistency in this declaration are the charts at pages 5-6. These charts indicate that the "benchmark" files in one instance contained only one white female, and no blacks or other minorities. The other year of "benchmarks" contained one black male and one white female, and no other minorities. Yet the earlier declaration of Mr. Howard Clayton of July 18, 2006, referenced in Lt. Col. Taylor's declaration, indicated that these "benchmark" records were not retained by rank order of pass/fail or selected randomly but rather were "cherry picked" to reflect the overall makeup of the Air Force. These charts at pages 5-6 clearly do not reflect that cross section of the Air Force. The 12 October 1993 "benchmarks" on page 5 of the declaration contain one minority/female out of 10 records or 10% in this comparative sample. Yet the number of all minorities considered according to attachment 5 to the declaration is 610 out of a population of 2246 for a percentage of 27%. This further challenges the fairness of these SSBs, exactly who was Plaintiff being compared to in the board review?

The charts of promotion rates provided at their attachments 4 and 5 to the declaration establish that in one of these promotion boards women, blacks and Hispanics were all promoted at a higher rate than the general population which consisted primarily of white males. The rates for Above the Primary Zone (officers being considered for other than the first time) show all minorities being selected at higher rates of 2-3 times the general population. In the other year only women were selected at a higher rate than the general population, but that is still a significant number. We are not provided earlier year statistics to compare the change before and after the illegal instructions were used so

we do not know the actual size of the increases in the promotion of minorities and women. However these statistics do indicate a preference being shown and it logically can be attributed to the instruction.

This establishes that there was in fact a taint in the records that were used by the SSBs. By definition, if more women and/or blacks were promoted they had to fall above the "grey area" cut off point. That would push other otherwise promotable white officer records down into the grey area. The Plaintiff has argued that the grey area contained hundreds of records. There is no way of determining whether any of these displaced "promotable" records were in the "benchmark" records. We do not even know how far that cut off line for pass and fail was moved by these "promotable" records being artificially lowered in the scale. However, the Defendant cannot establish that none of them were tainted. The absence of taint has to be made by indisputable evidence, not theory.

The declaration goes on to state the extreme cost of reconstituting the actual 92 and 93 boards yet it still does not explain why, even though they admit that it has been done before. On page 3 Lt. Col. Taylor states that "we made a Xerox copy of Mr. Rick's Officer Selection Record". If they had the means to make a copy of his record, they should similarly be able to make copies of all the eligibles for those years. It is clear that they have Plaintiff's records there. It cannot be a coincidence that they kept his records from the promotion boards in 92 and 93, even though this case wasn't filed until 7 years later. They have previously stated that they had conducted a number of other SSB for these Lt. Col. non-selection cases. Did they by coincidence have the records of all those plaintiffs too? There has been no affirmative statement in any of the Defendant's filings

to establish that these records are not already at AFPC, or an explanation of why some are there and some are not there. We still do not know a factual basis for why a recreation of the original board would require the extreme search for records that the declaration suggests.

The Court has continuously stressed it's concern for a showing that the taint has been removed from this SSB process. We submit that this declaration goes no further in proving that than the previous submissions. It is well established that there was in fact taint of the panel, the cherry picking of the "benchmark cases" back in 1992 and 1993 was not for the purpose of removing taint and nothing has happened since then that removes the taint..

CONCLUSION

This Court stated at page 10 of the remand order that the remand consideration would have to go beyond a comparative process because that in and of itself would not cure the problem of probable taint. It suggested that a meaningful remedy would have to incorporate a mechanism for assessing Plaintiff's record using race and gender neutral factors in comparing Plaintiff's record with benchmarks. There still is no showing that this has occurred in this remand. Although the data provided shows the benchmark records themselves to be somewhat neutral (given the absence of minority records in the benchmarks) there is zero evidence that these records are not tainted or that the benchmark records are even reasonable comparisons. They were not the last five selected and the first five not selected, but rather a discretionary selection by an unknown official from the hundreds of records in the gray area.

The Court has previously stated that a de novo review of all records may be required if the taint cannot be removed for an SSB consideration. There is no conclusive proof that the taint has been removed. The declaration establishes that a de novo review is possible, al beit expensive. Plaintiff urges the Court to direct that review at this time, or in the alternative issue a judgment providing relief to Plaintiff at this time.

Respectfully submitted,

//S//

Anthony W. Walluk

Counsel for Plaintiff